IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

---

ARTHUR MONTANA,

            Plaintiff,

    v.

KYRAN CONNOR,

            Defendant.

Civil Action
No. 10-3635 (JBS/JS)

**OPINION**

---

APPEARANCES:

Louis P. McFadden, Jr., Esq.
646 Ocean Heights Avenue, Suite 101-B
Linwood, NJ 08221
    Counsel for Plaintiff

David B. Bender, Esq.
OFFICE OF THE NEW JERSEY ATTORNEY GENERAL
DIVISION OF LAW & PUBLIC SAFETY
25 Market Street, P.O. Box 112
Trenton, NJ 08625
    Counsel for Defendant

**SIMANDLE**, District Judge:

## I.   INTRODUCTION

This matter requires the Court to determine whether particular acts taken by a New Jersey Superior Court judge are shielded by absolute judicial immunity.  The matter is before the Court on Defendant Kyran Connor's motion to dismiss the Amended Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  Defendant argues that the acts Plaintiff alleges he has taken were all judicial acts within his jurisdiction as a judge in the New Jersey Superior Court, Family Division, and that he is therefore immune from money damages for any injuries that

arose from those acts.  Plaintiff Arthur Montana argues, in opposition, that certain of Defendant's actions were administrative rather than judicial, and all actions were taken as part of a conspiracy with other Cape May County defendants who were not subject to judicial immunity.  Because the Court finds that the acts alleged fall within the functional definition of judicial acts and were not taken in complete absence of jurisdiction, judicial immunity applies and the Court will grant Defendant's motion to dismiss.

## II.  BACKGROUND

The facts set forth here are those alleged in the Amended Complaint and attached documents [Docket Item 15], which the Court must accept as true for purposes of a Rule 12(b)(6) motion. In this action, Plaintiff alleges that he suffered retaliation at the hands of Defendant because of the content of his speech and because of his complaints about Defendant and others.

Plaintiff is a juvenile-family crisis counselor employed by the County of Cape May, and has been so employed since 1991.  Am. Compl. ¶ 1.  Plaintiff works in the Juvenile-Family Crisis Intervention Unit ("JFCIU"), where he "assists families experiencing a 'juvenile-family' crisis . . . through family counseling and/or referral to appropriate agencies in the community."  Id. ¶ 2.  One of the tasks of a JFCIU counselor is to file petitions with the family court for out-of-home placement

of juveniles, and thereafter to appear in court to provide the court with information and recommendations relevant to the petition.  Id. ¶¶ 2-3.  Defendant was, at all times relevant, a Superior Court Judge, Family Division, in the County of Cape May. Id. at 2.  At the time, Defendant was the only Family Division judge in the County who presided over juvenile-family crisis petitions.  Id. ¶ 29.  Defendant Connor is the only named defendant in this action.[1]

On January 25, 2007, Plaintiff participated in a hearing before Defendant on a petition for out-of-home custody of a juvenile.  Id. ¶ 9.  In the hearing, Plaintiff recommended both shelter placement and an order that the juvenile be temporarily schooled at the shelter.  Id.  Defendant accepted Plaintiff's recommendations and signed an order to that effect.  Id.; Am. Compl. Ex. A.  Later that day, in response to subsequent contact from Diane Lanzetta, the Department Head of Cape May County Department of Youth Services and Plaintiff's supervisor at the JFCIU, Defendant modified his order in an e-mail.[2]  Id. ¶¶ 11-12; Ex. B.  Plaintiff, believing that Lanzetta's contact with

---

[1] The Court notes that several other individuals identified in Plaintiff's Amended Complaint are named defendants in a different action currently pending in this District Court.  See Montana v. County of Cape May Board of Freeholders, Civ. No. 09-0755.

[2] As an employee of the JFCIU, Plaintiff was evidently not a Superior Court employee, and the Court therefore infers from these facts that Defendant did not have direct supervisory control over Plaintiff's employment.

Defendant and Defendant's modification of the order via e-mail were improper, complained to Lanzetta, suggesting the conduct "constituted inappropriate conduct that undermined the integrity of the court system and alienated interested parties." Id. ¶ 13. Defendant allegedly learned of Plaintiff's complaint from Lanzetta. Id. ¶ 14.

On February 8, 2007, Plaintiff participated in another hearing before Defendant regarding the placement and schooling of another juvenile. Id. ¶¶ 18-19. During this hearing, Defendant criticized Plaintiff's recommendations. Id. ¶ 20. Defendant then entered an order disregarding part of Plaintiff's recommendation. Id. ¶ 21. Plaintiff believed that Defendant's "judicial determination" was based on improper criteria: Defendant's out-of-court conversations with Lanzetta. Id.

Later that day, Defendant sent an e-mail to Lanzetta criticizing Plaintiff's courtroom presentation and requested that Lanzetta remove Plaintiff as the counselor from two cases scheduled for hearings in the following weeks. Id. ¶ 27. The following week, Defendant met with Lanzetta in which they further discussed Plaintiff's handling of crisis petitions. Id. ¶ 28. Lanzetta thereafter reassigned two cases Plaintiff had been handling to other CIU staff and prohibited Plaintiff from appearing before Defendant until directed otherwise. Id. ¶ 29; Ex. C. Lanzetta lifted the suspension two months later, on April 27, 2007, with a warning that if she heard of additional

4

complaints from Defendant about Plaintiff's courtroom conduct, Plaintiff could be subject to further discipline.  Id. 32.

Three months later, Plaintiff sent a detailed complaint letter regarding his disputes with Defendant and Lanzetta to the Cape May County Board of Freeholders on July 26, 2007.  The County Administrator sent a copy of Plaintiff's complaint letter to Defendant, who responded to the Administrator in a letter on August 14, 2007 criticizing Plaintiff's "personal views, character, and performance as a crisis counselor."  Id. ¶ 33. Over the course of the next several months, Plaintiff appeared before Defendant "on approximately 20 occasions without any record of incident or complaint."  Id. ¶ 35.

On February 15, 2008, Plaintiff filed a civil suit in New Jersey Superior Court naming the Cape May County Board of Freeholders, Lanzetta, and Director of Human Resources Barbara Bakley-Marino as defendants.  Id.  Shortly thereafter, on March 7, 2008, Defendant sent an e-mail to Lanzetta (at a private e-mail address, apparently registered to her husband) again criticizing Plaintiff's performance and suggesting that Plaintiff "be plugged in somewhere where he couldn't do any harm."  Id. ¶ 36; Ex. D.  Defendant sent another e-mail to the same address making similar complaints about Plaintiff on April 8, 2008.  Id. ¶ 38.

On July 14, 2008, Defendant sent Lanzetta a letter complaining about further disruptive behavior of Plaintiff, this

time relating to Plaintiff's conduct outside the courtroom, but related to contact between Plaintiff and litigants appearing before Defendant.  Id. ¶ 39; Def.'s Mot. Ex. 2.  In the July 14 letter, Defendant "direct[ed] that the County prohibit the Plaintiff from appearing before him in any case."  Am. Compl. ¶ 39.  In response, Lanzetta directed that Plaintiff's work duties be restructured so that he would no longer appear in court before Defendant.  Id.  The County HR Director later asked Defendant if he would reconsider his position, and, in an e-mail dated August 8, 2008, Defendant declined to reconsider, stating "that he would insist that Plaintiff be barred from his courtroom."  Id. ¶ 40; Ex. E.  Lanzetta subsequently conducted a disciplinary hearing against Plaintiff due to the concerns raised by Defendant's letter.  Plaintiff was given a 90-day suspension at his disciplinary hearing.  Id. ¶ 47.  Lanzetta assigned Plaintiff to perform clerical work for other counselors.  Id. ¶ 48.  Plaintiff was, additionally, passed over for promotion multiple times during the period of his ban from Defendant's court.  Id. ¶ 43.

Plaintiff alleges that Defendant's critical letters and e-mails, and his barring Plaintiff from his court, were done as retaliation for Plaintiff's complaints, legal action, and viewpoints.  Id. ¶ 44.  Plaintiff also alleges that many of Defendant's criticisms of his conduct were false.  Id. ¶ 45.

Plaintiff filed this action against Defendant Connor in this Court on July 19, 2010. [Docket Item 1.]  Plaintiff subsequently

filed an Amended Complaint on December 15, 2010.  [Docket Item 14; corrected in Docket Item 15.]  Plaintiff's Amended Complaint raises ten counts for relief, pursuant to 42 U.S.C. § 1983 and the Civil Rights Act of New Jersey, N.J. Stat. Ann. § 10:6-2(c). All counts seek damages in compensation for Defendant's acts, alone and in conspiracy with Lanzetta and others, allegedly retaliating against Plaintiff for his protected speech through direct action and by creating a hostile work environment.

Defendant has moved to dismiss the Amended Complaint for failure to state a claim upon which relief can be granted, claiming that (1) Defendant's actions are shielded from damages liability by judicial immunity, and (2) Plaintiff fails to demonstrate that his protected conduct was a substantial factor in motivating Defendant's allegedly retaliatory acts.

## III. DISCUSSION

### A.  Standard of Review

In order to give defendant fair notice, and to permit early dismissal if the complained-of conduct does not provide adequate grounds for the cause of action alleged, a complaint must allege, in more than legal boilerplate, those facts about the conduct of each defendant giving rise to liability.  <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007); Fed. R. Civ. P. 8(a) and 11(b)(3).  These factual allegations must present a plausible basis for relief (i.e., something more than the mere possibility

7

of legal misconduct).  See Ashcroft v. Iqbal, 129 S.Ct. 1937, 1951 (2009).

In its review of a motion to dismiss pursuant to Rule 12(b)(6), Fed. R. Civ. P., the Court must "accept all factual allegations as true and construe the complaint in the light most favorable to the plaintiff." Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)).  The assumption of truth does not apply, however, to legal conclusions couched as factual allegations or to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Iqbal, 129 S.Ct. at 1949.

The Third Circuit Court of Appeals instructs district courts to conduct a two-part analysis when presented with a motion to dismiss for failure to state a claim upon which relief may be granted.  Fowler v. UPMC Shadyside, 578 F.3d 203, 210-211 (3d Cir. 2009) (citations omitted).  The analysis should be conducted as follows:

> (1) the Court should separate the factual and legal elements of a claim, and the Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions; and (2) the Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief, so the complaint must contain allegations beyond plaintiff's entitlement to relief.  A plaintiff shows entitlement by using the facts in his complaint.

Id.

"In deciding motions to dismiss pursuant to Rule 12(b)(6), courts generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." Lum v. Bank of America, 361 F.3d 217, 222 n.3 (3d Cir. 2004) (citation omitted).

## B.   Absolute Judicial Immunity

Defendant argues that Plaintiff fails to state a claim for damages because the doctrine of judicial immunity protects him from liability for all of the acts he committed.

As a general rule, judges acting in their judicial capacity are absolutely immune (in both their individual and official capacities) from suit for monetary damages under the doctrine of judicial immunity. See Mireles v. Waco, 502 U.S. 9, 9 (1991). Judicial immunity can be overcome only for actions not taken in a judicial capacity, id., or for actions taken in a complete absence of all jurisdiction, id. at 11-12.  The defendant who seeks protection under the doctrine of judicial immunity has the "burden of showing that such an exemption is justified," id. at 224.

Thus when a defendant asserts judicial immunity, the Court must conduct a two-part inquiry to determine whether judicial immunity is applicable. Gallas v. Supreme Court of Pennsylvania, 211 F.3d 760, 768 (3d Cir. 2000).

> First, a judge is not immune from liability
> for nonjudicial actions, i.e., actions not
> taken in the judge's judicial capacity.
> Second, a judge is not immune for actions,

9

> though judicial in nature, taken in the
> complete absence of all jurisdiction.

Id. (quoting Mireles, 502 U.S. at 11-12).

The first question, then, is whether the identified act taken by the defendant judge was a "judicial act."  The Court answers this question by reference to two factors: (1) whether the nature of the act itself is a judicial rather than administrative or ministerial act; see id. ("whether it is a function normally performed by a judge"); and (2) whether the "expectations of the parties" are that the judge be acting in a judicial role; id. (whether the parties "dealt with the judge in his judicial capacity").

The Supreme Court has held that a judge's decision to terminate a court employee is not a judicial act, but an administrative one.  Forrester v. White, 484 U.S. 219, 229 (1988).  The Court reasoned that, even though a judge's decisions regarding the hiring and firing of employees implicates the efficient operation of a court, the act is not judicial because it does not implicate the adjudicative function of the court directly and the aggrieved party (employee) does not deal with the judge in a judicial capacity, but in an employer/employee capacity.  Id.

By contrast, the Supreme Court has long held that a judge's exercise of control over the courtroom, including the admission and expulsion of attorneys and litigants, is a judicial act.  See Bradley v. Fisher, 80 U.S. 335, 346-47 (1871) (judge's order

10

expelling attorney from court was "in the lawful exercise and performance of his authority and duty as its presiding justice . . . [and] was a judicial act."); Mireles v. Waco, 502 U.S. at 12 ("[a] judge's direction to court officers to bring a person who is in the courthouse before him is a function normally performed by a judge.").

Allegations that actions were undertaken with an improper motive diminishes neither their character as judicial actions nor the judge's immunity.  See Forrester, 484 U.S. at 227. Similarly, "the informal and ex parte nature of a proceeding has not been thought to imply that an act otherwise within a judge's lawful jurisdiction was deprived of its judicial character."  Id. (citing Stump v. Sparkman, 435 U.S. 349, 363 n.12 (1978)).

With regard to the second inquiry, whether the defendant judge's action was taken in the absence of jurisdiction, "we must distinguish between acts in the 'clear absence of all jurisdiction,' which do not enjoy the protection of absolute immunity, and acts that are merely in 'excess of jurisdiction,' which do enjoy that protection."  Gallas, 211 F.3d at 769.  Even when a judge violates a rule of court procedure by taking the action, so long as the judge had general subject matter jurisdiction over the action, the act is not stripped of its judicial immunity.  Id. at 771 ("a judge does not act in the clear absence of all jurisdiction when the judge enters an order at least colorably within the jurisdiction of her court even

though a court rule or other procedural constraint required another judge to act in the matter.").

With these principles in mind, the Court turns to the instant dispute between Mr. Montana and Judge Connor.  Defendant characterizes the actions Plaintiff alleges he took as falling into one of two categories: (1) criticism of Plaintiff's performance and actions in service of the court, and (2) exercising control over his courtroom by barring Plaintiff from the court on the basis of his alleged disruptions.  Plaintiff, by contrast, distinguishes Defendant's "request" that Plaintiff's supervisor reassign Plaintiff to different work from the paradigmatic case of a judge ordering that a litigant be sanctioned or barred from the courtroom.  Additionally, Plaintiff argues that Defendant's communications with Plaintiff's supervisor were not legitimate criticisms of in-court performance, but were instead "attempts to defame, ridicule, embarrass, and adversely impact the Plaintiff and his employment status with the County."  Am Compl. ¶ 25.  The Court finds, after a thorough review of the allegations in Plaintiff's Amended Complaint and the attached exhibits, that Defendant Connor's actions alleged in Plaintiff's Amended Complaint fall within the protection of the judicial immunity doctrine.

1.  <u>Barring Plaintiff from Courtroom</u>

Plaintiff's primary claim of liability is that Defendant conspired with Lanzetta and others to harm his career by

12

restructuring the JFCIU so that he would no longer be allowed to present in family court in retaliation for his protected speech.

Defendant argues that, as he was not Plaintiff's supervisor and did not take any direct employment action against Plaintiff, his acts barring Plaintiff from his courtroom are judicial ones, immune from suit.  In addition to citing Bradley v. Fisher, 80 U.S., 346-47 and Mireles v. Waco, 502 U.S. at 12, Defendant also cites the Sixth Circuit case of  Cameron v. Seitz, 38 F.3d 264 (6th Cir. 1994).  In Cameron, a county probate judge, allegedly motivated by romantic jealousy, acted out against the his apparent rival, who was a youth counselor who frequently made appearances before the defendant judge in probate court.  Id. at 268-70.  In particular, the defendant judge "would not acknowledge [the plaintiff's] presence in the courtroom . . . would direct questions about [plaintiff's] cases to another counselor . . . [and] later refused [plaintiff's] admission to his courtroom."  Id. at 269.  The defendant then "issued a written order that 'all future assessments on [defendant's] cases shall be done by Mr. Aytch,' another counselor."  Id.

The Sixth Circuit held that Defendant's actions were covered by judicial immunity.  It reasoned that, pursuant to Mireles and Bradley, the act of controlling a judge's courtroom is a judicial act, and thus, because the act was judicial, the Court should not consider the improper motivations of the defendant judge.  Id at

271 ("[a] judge acts in his judicial capacity when he exercises control over his courtroom.").

Plaintiff attempts to distinguish <u>Mireles</u>, <u>Bradley</u>, and <u>Cameron</u> on the grounds that, in all three of those cases, the defendant judge issued an official order exercising control over the courtroom, whereas in the instant case, Defendant Connors merely wrote, in a letter to Plaintiff's supervisor that did not cite any legal authority, that he would "request that [she] immediately restructure the CIU in a manner that precludes Mr. Montana from appearing before me in family crisis matters, effective immediately."  Am. Compl. ¶ 44; Def.'s Mot. Ex. 2. Thus, Plaintiff reasons, the absence of an order, the fact that it was phrased as a "request", and the fact that Defendant requested a "restructuring" of the CIU all suggest that the "request" was an administrative act more akin to that of an employer than a judicial one.

The Court finds that the distinctions drawn by Plaintiff are not material to the issue.  That Defendant phrased his prohibition as a "request" rather than an "order", and that the "request" came in a letter to Plaintiff's supervisor rather than via an official act of the Court does not change the underlying function of the act, which was to assert control over the adjudicative process and exercise control over the court, "effective immediately."  As the Supreme Court has held, "the informal and ex parte nature of a proceeding has not been thought

14

to imply that an act otherwise within a judge's lawful jurisdiction was deprived of its judicial character."  Forrester, 484 U.S. at 227.

The only case the Court's research has uncovered in which a judge's exercise of control over his or her courtroom was not deemed to fall within judicial immunity is the Ninth Circuit case of Gregory v. Thompson, 500 F.2d 59 (9th Cir. 1974).  In that case, the Ninth Circuit began by acknowledging that, in general, it is "within a judge's power--indeed, it is his obligation--to protect the sanctity and dignity of . . . courtroom proceedings," but held that in the particular case before it, the judge's enforcement of that obligation by personally evicting a litigant from the courtroom by use of physical force was not a judicial act.  Id. at 64 (internal citations omitted).  By contrast, in the instant matter, the Court holds that the fact that Defendant exercised his control over his courtroom in a less formal, but no less final manner than an official judicial order, does not deprive the act of its judicial function.  See also, Muhammad v. Weis, Civ. No. 08-3616, 2009 WL 2525454 at * 14 (E.D. Pa., Aug. 17, 2009) (granting judicial immunity to defendant judge's decision to expel litigant from courtroom who refused to remove particular religious clothing items, allegedly in violation of first amendment, because "[a] judge acts in his judicial capacity when he exercises control over his courtroom, and by extension,

when he bars a litigant or attorney from the courtroom.") (citing Cameron v. Seitz, 38 F.3d 264, 271 (6th Cir.1994)).

Additionally, the Court finds that, under the "expectation of the parties" inquiry, Plaintiff dealt with Defendant exclusively in Defendant's capacity as a judge.  Plaintiff was not Defendant's employee, and only interacted with him (on the facts alleged in the Amended Complaint) through the adjudicative process.  Thus, the Court finds that the expectation of the parties was that Defendant would act toward Plaintiff in a judicial capacity, and Defendant's act, therefore, was of a judicial function.

Plaintiff additionally points to the existence of a dispute resolution process between the JFCIU and the New Jersey Superior Court, Family Division, as evidence that Defendant's actions barring Plaintiff from the courthouse were administrative in function rather than judicial.  Am. Compl. ¶ 49.  Plaintiff argues that, because Defendant could have addressed his concerns with Plaintiff through the "Letter of Agreement" resolution process, which is an administrative process, Defendant's act barring him from his court must have been an administrative act as well.  The Court finds this argument unpersuasive.  That some disputes between employees of JFCIU and employees of the Superior Court could have been resolved through an administrative process does not compel the conclusion that a judge's efforts at controlling his courtroom from a JFCIU employee must have been

16

administrative as well. <u>Forrester</u> directs the Court to look at the function of the specific act itself, which in this case was a judge taking an action that judges normally take: enforcing order in his courtroom.

Finally, the Court finds that Defendant's action of barring Plaintiff from presenting cases in his court was not done in absence of all jurisdiction. Defendant points out that under New Jersey law, a Superior Court judge has wide discretion to control the presentation of issues and decorum in his or her courtroom. <u>See</u> <u>New Jersey v. Castoran</u>, 325 N.J. Super. 280, 285 (App. Div. 1999). Plaintiff argues that Defendant lacked all jurisdiction to prohibit his appearance under the New Jersey Court Rules 5:17-1 <u>et</u> <u>seq</u>. The Court finds nothing in the rules cited by Plaintiff that would seem to prohibit the family court judge from expelling a representative of the county that he or she finds to be disruptive of the adjudicative process. Indeed, even if the Court found that some procedural rule governed this process that was not followed by Defendant in this case, the Court concludes that such a violation would, at most, be an act in excess of the judge's jurisdiction, and not in the complete absence of jurisdiction, as is necessary to deprive a judicial act of judicial immunity protection. <u>Figueroa v. Blackburn</u>, 208 F.3d 435, 441-43 (3d Cir. 2000) (holding that judge's jurisdiction "must be construed broadly where the issue is the immunity of the judge. A judge will not be deprived of immunity because the

action he took is in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction") (internal quotations omitted).

Thus, the Court finds that Defendant Connor's action barring Plaintiff from his court is entitled to judicial immunity.

2.   <u>Defendant's Criticism of Plaintiff</u>

Plaintiff additionally alleges that, beyond simply barring him from the court, Defendant frequently criticized Plaintiff's recommendations and conduct in handling cases before him.  For example, Plaintiff alleges that Defendant sent an e-mail to Lanzetta on the evening of February 8, 2007, following Plaintiff's appearance in his Court, in which he criticized Plaintiff's courtroom presentations.  He similarly published criticism of Plaintiff on August 14, 2007 in a letter to County Administrator O'Connor; on March 7, 2008 in an e-mail to a personal address Plaintiff alleges was associated with Lanzetta's husband and was apparently directed to Lanzetta; on April 8, 2008 to the same address; and in an August 8, 2008 e-mail to the County HR director.  Plaintiff alleges that these letters and e-mails contained false information and were motivated by a desire to "help destroy" Plaintiff's work reputation, and frequently included information about Plaintiff's character and also his out-of-courtroom behavior.  Am. Compl. ¶¶ 38, 44-45.

Defendant argues that these actions are covered by judicial immunity because they were judicial acts.  Defendant cites again to Cameron v. Seitz, 38 F.3d at 272 for the proposition that a judge's publishing criticism of the performance of parties in handling cases before the judge are judicial acts subject to judicial immunity.

> [W]e hold that the issuance of the report was an act judicial in nature. A judge's judicial independence would be severely compromised if he could not comment on or criticize the offices supporting his own court, without fear of liability.

Id.

Plaintiff argues that because some of the communications involved the "disclosing of confidential information about pending juvenile cases in the JFCIU" and made "sarcastic and ridiculing comments about the Plaintiff that demonstrate an individual participation in a clearly non-judicial function" the comments should not be protected under judicial immunity.  Am. Compl. ¶ 38.

The Court first notes that Plaintiff does not allege a claim of defamation or libel against Defendant, but rather violations of his right to free speech and petition for redress of grievances.  However, to the extent that Plaintiff claims that Defendant's allegedly false and libelous statements about him were made for the purpose of retaliating against his protected speech, and were sufficiently harsh as to meet the standard

necessary under first amendment retaliation[3], the statements could potentially be actionable if they are not covered by judicial immunity (or some other official immunity such as qualified immunity, which Defendant does not assert in his motion).

The Supreme Court has held that publication of defamatory matter to the news media is not a judicial function, and therefore not subject to absolute immunity.

> Absolute immunity does not apply to or include any publication of defamatory matter before the commencement, or after the termination of the judicial proceeding . . . nor does it apply to or include any publication of defamatory matter to any person other than those to whom, or in any place other than that in which, such publication is required or authorized by law to be made for the proper conduct of the judicial proceedings.

Buckley v. Fitzsimmons, 509 U.S. 259, 277 (1993) (internal quotation marks and citations omitted).

However, the Court can find no example of a court finding the dissemination of job-related criticism for the purpose of effectuating orderly courtroom behavior, can be deemed to fall outside the protections of judicial immunity.  This was not a case of Defendant distributing private or defamatory statements

---

[3] To state a prima facie case for First Amendment retaliation, a plaintiff "must show (1) constitutionally protected conduct, (2) an adverse action by prison officials sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights, and (3) a causal link between the exercise of his constitutional rights and the adverse action taken against him." Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003) (internal quotations omitted).

to a newspaper or to some other party not involved in the
functioning of the court.  Indeed, even under Buckley, the
Supreme Court acknowledged that judicial immunity would cover the
dissemination of material that is "made for the proper conduct of
the judicial proceedings."  Id. at 277.  The Court has already
determined that Defendant's decision to bar Plaintiff from
presenting cases in his court was properly determined to be a
judicial act.  Thus, it would be perverse if, as part of the
process of deciding to take a judicial act, a judge were to be
exposed to liability for expressing his justifications of that
act.  Further, the Court is persuaded by the reasoning of the
Sixth Circuit that "A judge's judicial independence would be
severely compromised if he could not comment on or criticize the
offices supporting his own court, without fear of liability."
Cameron at 272.  Thus, the Court concludes that the function of
Defendant's criticisms of Plaintiff's conduct in and related to
Defendant's court was judicial in nature.

Additionally, the Court finds that his criticisms were
expressed in his role as judge, and relating to Plaintiff's
conduct as a presenter in his court.  Thus, the expectations of
the parties would have been that Defendant would have acted in
his judicial capacity.

Finally, the Plaintiff makes no argument on this point that
Defendant's criticism was made in absence of all jurisdiction,
and the Court finds no reason so to conclude.  Thus, the Court

holds that Defendant's allegedly defamatory criticism of Plaintiff's conduct in and related to the court was a judicial act subject to judicial immunity.

###### 3.   Conspiracy Liability

Finally, Plaintiff argues that, even if Defendant's direct acts are deemed to be covered by judicial immunity, the Court must also consider the actions of Lanzetta and Defendant's other alleged co-conspirators, which Defendant does not allege are subject to judicial immunity.  The Court holds that, as Defendant's direct actions are all covered by judicial immunity, he cannot be held liable for the acts of alleged co-conspirators. See Stankowski v. Farley, 251 F. App'x 743, 746 (3d Cir. 2007) (holding that judge, alleged to be member of conspiracy with non-judge co-conspirators, is shielded by judicial immunity for his judicial acts, and not subject to liability for the acts of his co-conspirators); Hookey v. Pelzer, Civ. No. 08-1733, 2011 WL 743457 at * 4 (W.D. Pa., Feb. 1, 2011) ("Because judges must feel free to act without fear of incurring personal liability for their actions in court, judicial immunity remains in force even if the actions are alleged to be . . . taken as a result of a conspiracy with others.") (internal citations omitted).

Thus, because the Court finds that Defendant's acts are subject to judicial immunity, he cannot, therefore, be subject to liability purely on a theory of conspiracy liability.

IV.   **CONCLUSION**

The Court has concluded that Defendant's acts alleged in the Amended Complaint, including barring Plaintiff from his courtroom and criticizing Plaintiff's courtroom conduct, are judicial acts, subject to absolute judicial immunity.  Consequently, the Court does not reach Defendant's second argument that the Amended Complaint should be dismissed because Plaintiff cannot demonstrate the causal nexus required for first amendment retaliation.  The Court will grant Defendant's motion to dismiss for failure to state a claim.  The accompanying Order will be entered.


**September 16, 2011**                          **s/ Jerome B. Simandle**
Date                                            JEROME B. SIMANDLE
                                                U.S. District Judge